Matter of Sweet v Fonvil (2024 NY Slip Op 50511(U))

[*1]

Matter of Sweet v Fonvil

2024 NY Slip Op 50511(U)

Decided on April 26, 2024

Supreme Court, Rockland County

D'Alessio, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 26, 2024
Supreme Court, Rockland County

In the Matter of the Application of Justin Sweet, Aggrieved Candidate, Petitioner,

against
Vilair Fonvil, Respondent-Objector, and THE ROCKLAND COUNTY BOARD OF ELECTIONS, Respondent.

Index No. 032140/2024

Counsel for Petitioner: Daniel S. Szalkiewicz, Esq., Daniel Szalkiewicz & Associates, P.C., 23 West 73rd Street, Suite 102, New York, NY 10023.
Counsel for Respondent-Objector: None (appeared pro se).
Counsel for Respondent: Venita Denise Whidbee-Jordan, Esq., Rockland County Attorney's Office, 11 New Hempstead Road, New City, NY 10956.

Christie L. D'Alessio, J.

The Court, in compliance with CPLR 2219(a), identifies the following submissions as those relied upon in reaching the conclusions herein:
• NYSCEF Docs. 1-26;
• E-mail (with attachment) from Vilair Fonvil ("Objector") to the Court, Counsel for Justin Sweet ("Petitioner"), and Counsel for the Rockland County Board of Elections ("BOE"), dated Apr. 23, 2024 at 10:45 a.m.;
• E-mail (with attachment) from the Court to Objector, Counsel for Petitioner, and Counsel for the BOE (collectively, "Counsel"), dated Apr. 23, 2024 at 12:16 p.m.;
• E-mail (with attachment) from Objector to the Court and Counsel, dated Apr. 23, 2024 at 1:06 p.m.;
• E-mail (with attachment) from the Court to Objector and Counsel, dated Apr. 23, 2024 at 1:21 p.m.;
• E-mail from Objector to the Court and Counsel, dated Apr. 23, 2024 at 2:07 p.m.;
• E-mail (with attachments) from Counsel for Petitioner to the Court, Objector, and Counsel for the BOE, dated Apr. 23, 2024 at 11:28 p.m.;
• E-mail (with attachments) from Counsel for Petitioner to the Court, Objector, and Counsel for the BOE, dated Apr. 24, 2024 at 2:30 p.m.;
• E-mail (with attachments) from Counsel for Petitioner to the Court, Objector, and [*2]Counsel for the BOE, dated Apr. 25, 2024 at 7:52 a.m.;
• E-mail from the Court to Counsel and Objector, dated Apr. 25, 2024 at 10:32 a.m.;
• E-mail from the Court to Counsel and Objector, dated Apr. 25, 2024 at 10:36 a.m.;
• E-mail (with attachment) from Counsel for Petitioner to the Court, Objector, and Counsel for the BOE, dated Apr. 25, 2024 at 4:26 p.m.;
• E-mail (with attachment) from Objector to the Court and Counsel for Petitioner, dated Apr. 26, 2024 at 04:23 a.m.; and
• E-mail (with attachments) from Counsel for Petitioner to the Court, Objector, and Counsel for the BOE, dated April 26, 2024 at 09:06 a.m.[FN1]
BACKGROUND
Petitioner seeks, by way of Verified Petition and Order to Show Cause to Validate, an Order declaring, inter alia, that: (1) the Designating Petition he filed with the BOE designating him as a candidate for the Democratic Party for the position of Village Justice in the Village of Spring Valley in the June 25, 2024 primary election is valid; (2) the BOE include him as a candidate on the ballot used in that primary election; and (3) the BOE be enjoined from issuing any ballots for use in that primary election on which his name does not appear as a candidate. (See Docs. 1-3, 6-9).
Petitioner filed this action on April 18, 2024. (See Docs. 1-3). The Court issued an Order to Show Cause to Validate that same day. (Doc. 6).[FN2]
The next day, April 19, 2024, Petitioner "requested that the order to show cause be amended to permit" service on Objector by alternate means. (Doc. 7; see also Doc. 8). The Court granted that request and, later that same day, issued an Amended Order to Show Cause to Validate ("AOTSC"). (Doc. 9). Under the terms of the AOTSC, Petitioner was to serve Objector by either: (1) personal delivery, in accordance with CPLR 308, on or before 5:00 p.m. on April 19, 2024; or (2) affixing the papers to "the outer or inner door of the residence" that the Objector "set forth . . . on the General Objections filed" with the BOE and by overnight mail to that same address on or before 5:00 p.m. on April 19, 2024. (Id. at 3). Petitioner was likewise directed to serve the BOE by e-mail by 5:00 p.m. on April 19, 2024. (Id. at 3-4). The Court directed further that: (1) opposition papers be served and filed at or before 12:00 p.m. on April 23, 2024; and (2) reply papers, if any, be served at or before 09:30 a.m. on April 24, 2024. (Id. at 4). Affidavits of service were to be filed on or before April 24, 2024. (Id.). The Court directed also that:
the parties shall be prepared to proceed to a hearing on the merits and all other issues on the return date (including a traverse hearing, if deemed appropriate) of this order to show cause.
(Id.). Petitioner filed affidavits reflecting that: (1) the AOTSC and Verified Petition were served on Objector via (a) affixing copies thereof to the front door of his residence at 3:22 p.m. and (b) mailing copies thereof via UPS Next Day Air at 1:56 p.m. on April 19, 2024 (Doc. 10 at 1, 3; [*3]Doc. 23 at 3); and (2) the BOE was served via e-mail at 1:39 p.m. on April 19, 2024. (Doc. 10 at 1-2).
Objector, at 10:45 a.m. on April 23, 2024, e-mailed a letter to the Court requesting that his time to file opposition be extended to April 24, 2024 (i.e., the hearing date). (Doc. 11). The Court denied that request via e-mail and, at 1:06 p.m. on April 23, 2024, Objector submitted his Verified Answer via e-mail. (Doc. 12). The BOE, at 4:02 p.m. on April 23, 2024, filed a letter it had received from Objector reflecting the latter's request for an "opportunity to be heard [before the BOE] as to the validity of . . . 22 specific objections." (Doc. 16). Upon receiving this correspondence, the Court adjourned the appearance from 09:30 a.m. on April 24, 2024 to 2:00 p.m. on April 24, 2024, so as "[t]o accommodate that request and allow that hearing to proceed uninterrupted." (Doc. 17).[FN3]
 Petitioner filed his reply at 11:26 p.m. on April 23, 2024. (Docs. 18-20).
The parties appeared for the hearing at 2:00 p.m. on April 24, 2024. Objector withdrew on the record any arguments as to this action's timeliness or the propriety of service and consented to this Court's jurisdiction.[FN4]
The parties stipulated further as to entering five exhibits into evidence:
Resp. Board's Exhibit A: Petition # 1151, Petition of Justin Sweet for the Democratic Party's Nomination for Village Justice of Spring Valley
Resp. Board's Exhibit B: Page 34 of Justin Sweet's Petition with Rulings and Back-Up re Objections 5, 6, and 8 (Vol. 1, Pg. 34);
Resp. Board's Exhibit C: NYS Board of Elections Guidance: Village Elections and County Boards of Election (undated);
Resp. Board's Exhibit D: Guidance from the BOE re Specifications of Objections (Mar. 1, 2024); and
Resp. Board's Exhibit E: Guidance from BOE to Candidates for the June 25, 2024 [*4]Primary Election.
Petitioner called one witness, BOE Commissioner Patricia A. Giblin, at the commencement of the hearing on April 24, 2024.
By the close of the April 24, 2024 hearing, the parties agreed that: (1) the Designating Petition required 407 signatures; and (2) the BOE sustained 136 objections, yielding a total of 390 valid signatures (i.e., a 17-signature deficit). To this end, Petitioner's attack was three-pronged:
(1) Objector's objections were untimely;
(2) 3 signatures could be rehabilitated since—although the signatures matched registered members of the Democratic Party in the Village of Spring Valley—the BOE sustained the related objections only because the addresses did not match; and
(3) 23 signatures could be rehabilitated given that the BOE sustained those objections only because the voters printed (i.e., did not sign) their names.[FN5]
The Court, at the end of the April 24, 2024 appearance, adjourned the hearing to 11:00 a.m. on April 25, 2024. In advance thereof, at 7:54 a.m. on April 25, 2024, Petitioner e-mailed the Court and parties copies of 19 affidavits filed earlier that morning on NYSCEF, one decision from the Appellate Division, and a link to the New York State Senate website regarding amendments to CPLR 2106. (See Doc. 25).[FN6]
The Court acknowledged receipt and, by e-mail to the parties before the hearing, outlined specific issues it wanted the parties to address during the hearing.[FN7]

The hearing continued to conclusion on April 25, 2024, where the Court accepted the following additional exhibits into evidence:
Resp. Board's Exhibit F1-F15: Objections with Associated Ruling Sheets and Buff Cards;
Pet.'s Exhibit 1A-1S: Affidavits Provided by Certain Voters Whose Signatures Were Invalidated; and
Pet.'s Exhibit 2: Interagency County Document Received by the BOE Indicating that the [*5]Address for 10 Collins Avenue, Spring Valley, New York Was Modified to 12 Collins Avenue, Spring Valley, New York.[FN8]
Petitioner re-called BOE Commissioner Giblin and took the stand himself. Objector cross-examined both witnesses and, at the close of Petitioner's case, declined the opportunity to call witnesses or present evidence in support of his own position. Petitioner, at that juncture, conceded that—although he intended to challenge the timeliness of Objector's objections in the first instance—they were, in fact, timely.[FN9]

Petitioner, at the close of the hearing, provided the Court and parties with precedent regarding the court's jurisdiction via e-mail. At 04:32 a.m. on April 26, 2024 (i.e., the day after the hearing closed and this matter was sub judice), Objector e-mailed the Court and Petitioner a letter attempting to revive his argument as to service. (Doc. 26). Petitioner responded later that same day, at 09:06 a.m., with an e-mail attaching NYSCEF Doc. 10 and a video of Petitioner's Counsel serving the papers.[FN10]

ANALYSIS
The Court, notwithstanding any conclusion infra, addresses each active argument maintained by the parties following the close of the hearing.
I. Petitioner's Arguments Regarding Rehabilitation by Affidavit
The Court, in accordance with precedent from the Appellate Division, adjourned the hearing overnight, allowed Petitioner to submit affidavits to rehabilitate signatures invalidated because the address on the Designating Petition did not match the address on the associated buff card or the voter printed their name (as opposed to signing), and gave Objector an opportunity to be heard with respect to that evidence. See Braunfotel v. Feiden, 172 AD3d 1451, 1451 (2d Dep't 2019) ("[T]he Supreme Court providently exercised its discretion in granting the candidate an overnight adjournment, i.e., until 10:00 a.m. the next day, to submit additional evidence . . . and [*6]affording the appellant an opportunity thereafter to object to such evidence."); Jaffee v. Kelly, 32 AD3d 485, 485 (2d Dep't 2006); see also Rowlands v. Baker, 219 AD3d 1080, 1083 (3d Dep't 2023) ("[A]ffidavits from registered voters may be received in evidence to establish that those individuals signed an independent nominating petition.").[FN11]

Following the testimony, argument, and evidence entered into the record at the hearing, the Court reviewed the objections as to signatures and addresses. In consideration of all the foregoing, the Court concludes that Objector raised no allegations of fraud or deception that would suggest that Petitioner did anything to warrant rejecting the affidavits, Fatata v. Phillips, 140 AD3d 1295, 1296-97 (2d Dep't 2016) (internal quotation marks omitted), and rules as provided on the chart contained on the following page:
COURT'S RULINGS ON OBJECTIONS

Page

Line

Name

Objection

Ruling

Rationale

7

1

Moishe Rosenberg

Printed Name

Valid

Rehab. by Aff. (F1, 1A)

8

1

Trane Knobloch

Printed Name

Valid

Rehab. by Aff. (F2, 1B)

18

13

Duvid Weichbrod

Printed Name

Valid

Rehab. by Aff. (F3, 1C)

18

14

Leah Weichbrod

Printed Name

Valid

Rehab. by Aff. (F3, 1D)

21

1

Issac Berkowitz

Printed Name

Valid

Rehab. by Aff. (F4, 1E)

22

16

Beilu Moskowitz

Printed Name

Valid

Rehab. by Aff. (F5, 1F)

24

4

Rebecca Neuschloss

Printed Name

Valid

Rehab. by Aff. (F6, 1A)

[*7]32

1

Yokove Gross

Printed Name

Valid

Rehab. by Aff. (F10, 1H)

32

2

Sarah Gross

Printed Name

Valid

Rehab. by Aff. (F10, 1I)

32

5

Rachel Cik

Printed Name

Valid

Rehab. by Aff. (F10, 1J)

34

5

Esther Kornbluh

Address

Valid

Rehab. by Aff. (F11, 1K)

34

6

Shmiel Kornbluh

Address

Valid

Rehab. by Aff. (F11, 1L)

37

4

Shalom Taub

Printed Name

Valid

Rehab. by Aff. (F12, 1M)

37

6

Mordechai Spira

Printed Name

Valid

Rehab. by Aff. (F12, 1N)

37

7

Vitty Spira

Printed Name

Valid

Rehab. by Aff. (F12, 1O)

37

17

Pinchus Turnheim

Printed Name

Valid

Rehab. by Aff. (F12, 1P)

38

1

Lea Mendelowich

Address

Valid

Rehab. by Aff. (F13, 1Q)

40

8

Yenty Kraus

Printed Name

Valid

Rehab. by Aff. (F14, 1R)

[*8]42

2

David Katz

Printed Name

Valid

Rehab. by Aff. (F15, 1S)

Signatures Required for Valid Designating Petition

407

Valid Signatures Before Rehabilitation

390

Signatures Rehabilitated

19

Total Valid Signatures

409

[FN12]
[FN13]

Given the foregoing, the Designating Petition has 2 more signatures than necessary.
II. Objector's Arguments in Opposition to the Relief Sought in the Verified Petition
Having concluded that Petitioner successfully rehabilitated 19 signatures in this proceeding, the Court turns now to Objector's arguments in opposition to the relief sought.
First, Objector argued during the second day of the hearing that the Verified Petition is improper because the verification, itself, is insufficient. The Court disagrees. A proceeding under Article 16, like this, "shall be heard upon a verified petition . . . ." NY Elec. Law § 16-116. "A verification," in turn, "is a statement under oath that the pleading is true to the knowledge of the deponent, except as to matters alleged on information and belief, and as to those matters he believes them to be true." CPLR 3020(a). Petitioner's verification provides such a sworn statement. (Doc. 1 at 7). Indeed, Objector did not specify how Petitioner's verification was [*9]insufficient and he conceded on the record that, given the similarities between the verifications both he and Petitioner submitted, both would be inadequate. See also CPLR 2106. This argument is rejected.
Second, Objector insisted that Petitioner could not rehabilitate signatures invalidated for an improper address. The case upon which Objector relied, however, is distinguishable. In Tischler v. Hikind, 98 AD3d 926, 927 (2d Dep't 2012), the Appellate Division, Second Department, found that, according to NY Elec. Law § 6-130, the "designating petition must set forth in every instance the name of the signer, his or her residence address, town or city . . . and the date when the signature is affixed." (internal quotation marks omitted). That decision makes no mention, however, of an attempt to rehabilitate invalid signatures. And, moreover, the statute quoted directs that the signer provide "his or her residence address, town or city . . . ." NY Elec. Law § 6-130 (emphasis added). This would suggest to the Court—although not advanced by Petitioner—that the law requires that a signer's residence address or the town or the city be included in the Designating Petition.[FN14]

Third, Objector averred that this Court cannot validate one specific signature—that of David Weichbrod (Page 18, Line 13)—because doing so would, in effect, let Mr. Weichbrod sign the Designating Petition twice. Although it was unclear at the hearing, with the benefit of oral argument, the Court understands the argument as follows:
Objector challenged Mr. Weichbrod's printed signature on Page 18, Line 13 only because it was printed;
Objector challenged Mr. Weichbrod's actual signature on Page 38, Line 10, only because it duplicated the printed signature referenced above (i.e., Page 18, Line 13); and
the BOE sustained the objection to the printed signature (i.e., Page 18, Line 13) and invalidated it because it was printed, but overruled the objection to the signed signature (i.e., Page 38, Line 10).
Objector's argument is, therefore, that equity prevents this Court from validating the printed signature. Although there is clearly logic in that position, the fundamental problems are as follows: (1) the objection to Mr. Weichbrod's printed signature on Page 18, Line 13 was based only upon the fact that it was printed; (2) that specific objection was sustained; and (3) Petitioner comes before this Court asking that the BOE's determination as to that signature, for that reason, be overturned because it could be rehabilitated by way of affidavit. That question—i.e., whether the printed signature has been rehabilitated—is the only question presented in the Verified Petition. Objector, to the extent he wished to expand the footprint of this proceeding, was free to commence his own action under NY Elec. Law § 16-102 to invalidate the Designating Petition and properly bring that issue before the Court. He did not do so. The Court lacks jurisdiction to consider the BOE's rulings as to signatures it validated. See Frascone v. Rockland Cty. Bd. of Elecs., 87 AD3d 667 (2d Dep't 2011). Objector's argument on this point must be rejected.
Fourth, Objector maintained in his Verified Answer that the Verified Petition "fail[ed] to state a claim upon which relief can be granted" and that it provided no "specificity and [*10]particularity [as to] the nature, grounds, or basis upon which Petitioner disagree[s] or [is] aggrieved by the" BOE's conclusions. (Doc. 12). The Court, again, disagrees. The Verified Petition advised that Objector had filed objections and sought an Order to Show Cause so "that an anticipatory proceeding may be commenced in a timely fashion in the event . . . [that the BOE] should render a determination adverse to Petitioner . . . [he] may resuscitate signatures that were erroneously sustained . . . ." (Doc. 1 ¶ 13). This allegation—in conjunction with the other information contained therein—given the liberal pleading standard, is sufficient to proceed under NY Elec. Law § 16-102. This final argument is, like those before it, rejected.
CONCLUSION
As set forth more fully above, the Verified Petition is GRANTED in its entirety—19 signatures have been rehabilitated by way of affidavit, with the result that Petitioner has submitted a Designating Petition with 409 valid signatures (i.e., a valid Designating Petition) to the BOE. Objector's challenges are overruled as described herein. The BOE is directed to print and/or place Petitioner's name on the ballot as a candidate for the public office of Village of Spring Valley Justice in the June 25, 2024 primary election.
The Clerk of the Court is respectfully directed to terminate Mot. Seq. No. 001 (GRANTED) and close this case.
SO ORDERED.
Dated: April 26, 2024
New City, New York
HON. CHRISTIE L. D'ALESSIO, J.S.C.

Footnotes

Footnote 1:E-mail correspondence is considered in this case because Objector, a pro se litigant, lacks NYSCEF access. The Court has, however, filed Objector's Verified Answer and other correspondence attached to his e-mails on his behalf.

Footnote 2:This matter was initially assigned to the Hon. Keith J. Cornell, A.J.S.C. (See Docs. 4-5).

Footnote 3:That Court Notice also directed that Counsel e-mail copies thereof to Objector and file proof of service to the docket. Counsel complied. (See Docs. 17, 21, 24).

Footnote 4:Objector, in his Verified Answer, challenged this Court's authority to issue the AOTSC and averred that service was ineffective. (Doc. 12 at 2). Although Objector withdrew this argument on the record during the first day of the hearing, by letter submitted via e-mail at 04:32 a.m. on April 26, 2024 (i.e., after the close of the hearing and evidence), he attempted to resuscitate this argument by claiming that "service . . . was not completed" because the AOTSC was not mailed to him and requesting "a very short hearing" on the issue. (Doc. 26 at 1). The application is denied. Assuming, arguendo, that Objector could retract his concession on the record, the affidavits of service establish that Petitioner complied with the service directives contained in the AOTSC. (Compare Doc. 9 at 3, with Doc. 10 at 1, 3 (noting service via UPS Next Day Air), Doc. 23 at 3 (affirming that a copy of the AOTSC and Verified Petition were affixed to the front door of Objector's residence)). The Court notes that Petitioner responded with an e-mail at 09:06 a.m. on April 26, 2024 attaching a video of Petitioner's Counsel preparing the UPS mailing at the UPS Store. That supplementary material—while diligent—is unnecessary for the Court to consider in this case.

Footnote 5:Petitioner, at 2:30 p.m. on April 24, 2024, e-mailed the Court and parties precedent regarding a would-be candidate's ability to rehabilitate objections by way of affidavit.

Footnote 6:Petitioner filed the affidavits to NYSCEF approximately ten minutes before providing them via e-mail. (Doc. 25).

Footnote 7:Objector indicated, in response to the Court's request for argument at the close of the hearing on April 25, 2024, that he had not received this e-mail before the appearance. The Court printed that correspondence, provided it to him, and allowed him time to review it before hearing closing arguments. Given the time constraints of this matter, the Court denied Objector's request to submit closing arguments in writing on April 26, 2024. That ruling did not prevent Objector from attempting to revive his objection as to service in a letter attached to an 04:32 a.m. e-mail on April 26, 2024. (See discussion supra n.4).

Footnote 8:Respondent Board's Exhibit F1-F15 was entered on consent and Petitioner's Exhibit 2 was entered without objection. Petitioner's Exhibit 1A-1S, however, was entered over objection because Petitioner established a proper foundation. To the extent Objector intended to challenge the form of the affidavits, the Court finds that they comply with the recently-enacted changes allowing sworn statements without a notary. See CPLR 2106.

Footnote 9:The provisions of Article 15 of the Election Law, "Village Elections," control except in situations where—as is the case here—a village passed a resolution under NY Elec. Law § 15-104(c) allowing the BOE to conduct village elections. NY Elec. Law § 15-100. Where a village has passed such a resolution, Article 15 controls to the extent it is "not inconsistent with other provisions of" Chapter 17. Id. Accordingly, because the timeframe set out by NY Elec. Law § 15-108(10) conflicts with that outlined in NY Elec. Law § 6-154(2), the latter controls.

Footnote 10:As set forth more fully above, Objector's service argument is rejected on the merits. (See discussion supra n.4).

Footnote 11:The difficulty of securing affidavits overnight was compounded by the fact it was Passover.

Footnote 12:The Court, in comparing the affidavits that Petitioner submitted against the buff cards that the BOE provided, undertook to determine whether, as the law requires, each "signature reasonably correspond[s] to the signature on the registration record." Fonvil v. Charles-Pierre, 71 Misc 3d 1228(A) (Sup. Ct. 2021) (internal quotation marks omitted). For ease of reference, "F" refers to Respondent Board's Exhibit F and "1" refers to Petitioner's Exhibit 1.

Footnote 13:In addition to the analysis performed by the Court in confirming that the signatures on the Kornbluhs' affidavits advising as to their current address in Spring Valley was reasonably similar to those on the buff cards provided by the BOE, Petitioner presented evidence that the Kornbluhs' specific address was changed from 10 Collins Avenue, Spring Valley, New York (i.e., the one they provided) to 12 Collins Avenue, Spring Valley, New York (i.e., their correct address) by Rockland County. (See Pet. Ex. 2). Indeed, BOE Commissioner Giblin explained that 10 Collins Avenue was changed to 12 Collins Avenue by operation of a Rockland County "911" address change and that, had the BOE been advised of that fact before ruling, it would have updated the address accordingly—meaning, in other words, that the BOE would not have invalidated the Kornbluhs' signatures.

Footnote 14:It appears that every signature rejected for an invalid address and rehabilitated herein included, in the last column on the right, a notation that they live in the Town of Ramapo. (See Resp. Ex. A at Pg. 34, L. 5-6, Pg. 38 L. 1).